**Affirm and Remand and Opinion Filed September 20, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00438-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**BRADLEY SHAVERS, Appellee**

**On Appeal from the County Criminal Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. MC19-A6636**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Pedersen, III

Appellee Bradley Shavers sought habeas corpus relief from an order placing him on community supervision; the order was signed followed his conviction for driving while intoxicated (DWI) and the subsequent granting of his motion for new trial. The habeas court granted Shavers's application. The State of Texas appeals and raises three issues for our review: (1) whether Shavers was required to file—and did file—his motion for new trial; (2) whether the trial court had jurisdiction to order Shavers to community supervision when it had signed the order granting the motion for new trial; and (3) whether the trial court failed to apply the doctrine of laches. We affirm the habeas court's order.

## Background

A jury convicted Shavers of DWI on April 30, 2007. The trial court granted his motion for new trial on May 5, 2007. By order dated June 8, 2007, the court placed Shavers on community supervision for twenty-four months.

### *The Habeas Amended Application*

On November 26, 2019, Shavers filed his pro se "Application for Writ of Habeas Corpus Seeking Relief from Final Misdemeanor Conviction under Tex. Code Crim. P. Art.11.09," asking the habeas court to declare his 2007 conviction and judgment void. With assistance of appointed counsel, Shavers filed his "First Amended Application for Writ of Habeas Corpus" (the Amended Application), which alleged four grounds for relief: Shavers was denied the right to counsel at the DWI trial; the trial court's judgment was void because a motion for new trial had been granted by the trial court; the trial court lacked jurisdiction to revoke his community supervision; and the DWI judgment was void because the trial court imposed an illegal sentence. The State responded, denying each of the four grounds and invoking the doctrine of laches. The habeas court held an evidentiary hearing, and it ultimately granted the Amended Application on the second ground. Our opinion is limited to that second ground, i.e., the circumstances surrounding Shavers's motion for new trial.

*The Habeas Hearing*

Four witnesses testified at the habeas hearing. We summarize their testimony that relates to Shavers's motion for new trial.

Sedrick King

Shavers first called Sedrick King, the Records Information Officer for the Dallas County Clerk. King had the file from the 2007 DWI case in his possession at the time of the hearing. He had produced a certified copy of fifty-six pages of documents that were included in that file shortly before trial. King could not explain why, in earlier responses for requests of the whole file, both the State and counsel for Shavers had received a much smaller number of documents.

He agreed that the file did not contain the information charging Shavers, the jury charge, or any documents related to the withdrawal of Shavers's attorney. King did not know why these documents were not in the file. He acknowledged that they could have been misfiled, although he testified that he had checked the file in another case involving Shavers and the documents were not in that file either.

Judge Thomas Fuller

The State called Judge Thomas C. Fuller, retired judge of the Dallas County Criminal Court No. 5; Judge Fuller had presided over Shavers's 2007 DWI trial.[1] He testified that after that trial, on May 7, Shavers had approached him in open court.

---

[1] The parties agreed to allow Judge Fuller to testify out of order. We summarize the testimony in the order it was presented to provide a clearer narrative.

As he testified, Judge Fuller believed that Shavers was alone; he believed that Shavers did not have counsel at the time. Judge Fuller was "not sure" whether there was a prosecutor present at the time. Shavers had a form motion for new trial that was available to attorneys and pro se litigants; the form contained both the motion and the order ruling on it on a single page. When presented with the State's exhibit, Judge Fuller said that he remembered it. The portion of the exhibit that set forth the motion for new trial stated the following:

> Comes now the Defendant in the above styled and numbered cause and by Defendant's attorney, if any, moves this Judge to grant a new trial for the reason that the verdict is contrary to the law and evidence.

Judge Fuller recalled that Shavers wanted to appeal; he believed that either he or the clerk had told Shavers he needed to file a motion for new trial before he appealed. Judge Fuller stated that he had a conversation with Shavers and advised him that he had received "a good probation" and that he should "seriously consider it." Because Shavers wanted to proceed, the judge signed the form and granted the motion for new trial; then he gave the signed document back to Shavers. (Going forward, we will refer to this single-page document—containing both the motion for new trial and the order signed by Judge Fuller granting it—as the Motion.)

When asked whether he gave Shavers any instructions on what to do with the Motion, the judge responded:

> The only thing I believe I said to him was, I told him to think long and hard about what he is considering doing. He has got the opportunity, he needs to think it over and make a decision as to how he wants to proceed. But he was in a hurry; he needed to leave.

–4–

Judge Fuller testified that when "it was time to proceed on with the probation," he asked the clerks, and they told him that Shavers had not filed the Motion, so he moved forward with probation requirements. He did not recall ever discussing the Motion again with Shavers.

The judge testified that he knew Charlie Humphreys, a Dallas lawyer at the time. He testified that Humphreys "may have approached [him] on something" related to this case, but he had "no specific recollection" of any such discussion. When asked if Humphreys could have approached the judge concerning the Motion, he initially answered: "He could have, I don't know." Later he stated that while Humphreys may have approached him, he did not think Humphreys had anything to do with the Motion; he remembered only Shavers coming in with it.

During cross-examination, Judge Fuller testified that he had overseen roughly 200,000 cases in his career as a trial judge. He stated that the only reason he recalled details of this case was because he granted a motion for new trial; in his career, he stated, he had "only granted maybe a few of them."[2] Judge Fuller acknowledged that the Motion was timely presented to him and that he signed it, but he said he did not know what happened to the Motion after he gave it to Shavers. He noted several times in his testimony that the file had "turned up missing" or had "disappeared"; he

---

[2] Despite the rarity of his granting such a motion, the judge volunteered that "[f]or the life of me, I cannot remember why" he had done so in this case. Counsel for Shavers proposed a number of possible reasons related to Shavers's representation concerns, but the judge denied that those had been the reasons he granted the Motion. In the end, he testified: "I believe it had to do with something that actually happened in the trial itself, but I don't recall exactly what it was."

apparently did not know until he was told by counsel during the habeas hearing that by then the file had been found. Judge Fuller testified he did not know what had happened to other documents that he agreed should have been in the file, or why there were two judgments signed in the case,[3] although he finally conceded: "I think there was some paperwork lost."

<u>Bradley Shavers</u>

Shavers then offered his own testimony. He was found guilty in the underlying case on April 30, 2007. He testified that Humphreys—who was representing him in another case at the time—was in the courtroom at that time; the two men spoke after the trial. Shavers testified that he signed a contract with Humphreys for this matter and then set a hearing on a motion for new trial. (He agreed to pay and paid a $300 fee in Humphreys's office for this representation.) On the day of the hearing, Humphreys and Shavers appeared together at the bench before Judge Fuller. Humphreys presented the new-trial arguments, and Judge Fuller granted the Motion. Judge Fuller also granted Shavers a court-appointed attorney and told him to be sure his contact information was up to date, because he would be contacted about the appointed attorney and a new trial date. Shavers stated that Judge Fuller handed the Motion to Humphreys, not to him. And because Shavers was there with counsel,

---

[3] Two judgments were in evidence at the hearing. One was signed May 2, 2007; it assessed Shavers's punishment at 24 months' community supervision and an $800.00 fine. The second was signed June 7, 2007; it assessed punishment at 180 days' confinement and an $800.00 fine. Both judgments bear Judge Fuller's stamped signature. The June 7 judgment was included in the production made by King before the habeas hearing; the May 2 judgment was not.

Judge Fuller never told him to file the Motion. Shavers stated that after they left the courtroom, Humphreys told him to wait in a chair in the hall. Humphreys went through a door and then returned and gave Shavers a copy of the Motion. Humphreys reminded Shavers of the court's directive to watch for contact by the court-appointed attorney.

Shavers did not receive any contact about the new trial; eventually, he called the court and left a message asking about the trial and new counsel. In response, someone from the court called and spoke to Shavers's mother, but she was told that Shavers needed to turn himself in immediately. When he appeared the next day and tried to tell the clerk and bailiff that he had been given a new trial, he was handcuffed, placed in a holdover cell, and told he would need to serve out his time. Shavers asked repeatedly to speak to Judge Fuller, but the judge did not speak to him. After some time, a representative from the probation department came to the cell and told him he had to sign the probation papers or go to jail and serve time. He testified he signed the papers under duress.

Shavers testified that he later went to the clerk's office and filled out a request for his file. When he hadn't heard back, he called the clerk's office and was told the court had the file. When he called the court, he was told he could not see the file or talk to Judge Fuller unless he had an attorney. He continued to call the court, and went personally to try to speak to the judge. Then his probation officer told him "she received a call from the Court that [he] was harassing the Court and if [he] did it

again, that the judge would hold [him] in contempt, revoke [his] probation and send [him] to jail." He made no further attempt to talk to Judge Fuller about the Motion.[4]

## Charlie Humphreys

The State called Lloyd Charles (Charlie) Humphreys as its final witness. He testified initially that he did not remember the name Bradley Shavers, but he recognized Shavers's face at the hearing as a former client. Humphreys identified the contract offered by Shavers as one of his, and he identified his assistant's handwriting on the document. He testified the contract indicated that Shavers had paid him to perform a service, but he did not recall what that service was. He testified that in 2007, if he worked on a motion for new trial for a client, he would fill out the form and bring his client to get the judge to sign it. He agreed that the State had a right to be present at such a hearing; if it was an informal hearing there might not be a court reporter making a record.

On cross, Humphreys agreed that the Motion was dated three days after his contract with Shavers, but he did not recall anything about it. He agreed that his normal practice at that time would have been to file the Motion and give a copy to his client.

---

[4] Shavers did describe one conversation he had with Judge Fuller, testifying: "I know that at one point in time that I was coming up here to ask him about it. He did mention that it is not the Court's problem now, and they are not going to reopen the case." It is not clear in the record when this conversation took place.

On redirect, Humphreys denied that the fee paid by Shavers could have been charged for a post-conviction consultation because he did not do that kind of work and because he does not charge for consultations. He agreed that the $300.00 "might be a reasonable fee that [he] would have charged back then just to approach the Court at the bench and present this basic motion that [he] got out of the Court." He would not have agreed to "doing the new trial for $300.00" The contract was filled out by his assistant, perhaps when Shavers paid the fee; she would not have taken money from someone without his approval.

*The Habeas Court's Findings of Fact and Conclusions of Law*

The habeas court's findings outlined Shavers's conviction and his presentation of the Motion to Judge Fuller. The court found that Judge Fuller signed and granted the Motion. And it found that "[t]he motion for new trial and order granting same was filed with the clerk's office and Applicant was given a copy of same by attorney Humphreys." The court found further that "[t]he Court Clerks did not properly file numerous documents from Applicant's DWI case in the court file." And it found that evidence supports that the Motion "is one of the missing documents from the court clerk's file." The court found, thus, that Shavers did timely file and present the Motion.

The habeas court granted Shavers's Amended Application on its second ground. It concluded that Shavers's case "is placed reverted back to the point of an

–9–

information being filed for the offense of DWI." Finally, the court concluded that "laches does not bar consideration of all other equitable issues in this case."

**Discussion**

Article 11.09 of the Texas Code of Criminal Procedure governs a habeas corpus application when the applicant has been charged with a misdemeanor offense. TEX. CODE CRIM. PROC. ANN. art. 11.09(a). When we review a habeas court's ruling on an article 11.09 application, we must view the evidence in the record in the light most favorable to the court's ruling, and we must uphold that ruling absent an abuse of discretion. *Diamond v. State*, 613 S.W.3d 536, 544 (Tex. Crim. App. 2020). We afford almost total deference to the court's factual findings when they are supported by the record, especially when they are based on credibility and demeanor. *Id.* We likewise defer almost totally to any implied findings and conclusions supported by the record. *Id.* We will uphold the habeas ruling if it is correct under any theory of applicable law. *Id.* at 544–45.

*Filing of the Motion*

In its first issue, the State asks whether a defendant must file a motion for new trial before such a motion can be enforced. It contends that a motion must be filed, and the heart of its argument on appeal is its contention that there is no evidence in the record that the Motion was filed in Shavers's DWI case file. For purposes of this opinion, we assume that the rules of appellate procedure require a motion for new

trial to be filed to be effective. *See* TEX. R. APP. P. 21.4 ("Time to File and Amend Motion").[5]

We acknowledge that reasons exist to question whether the Motion was filed. Shavers's DWI case file, as produced by King, does not contain the Motion. And the copy of the Motion used as an exhibit in the habeas proceeding does not bear a file stamp. Shavers does not claim to have filed the document himself; he testified that Humphreys took the document out of his sight and returned with the copy that became the habeas exhibit. Judge Fuller contends that he gave Shavers the option of filing the Motion or taking the probated sentence he'd been given and that he asked clerks whether the Motion had been filed, and they said it had not.

The trial court, however, found that the Motion *was* filed with the clerk's office, although it was one of a number of documents that are missing from that file. We view the evidence in the record in the light most favorable to the court's ruling, and we must uphold that ruling absent an abuse of discretion. *See Diamond*, 613 S.W.3d at 544. We must determine whether these findings are supported by the record; if so, we defer to the habeas court's findings. *See id.* And our deference is especially strong when the findings are based on credibility and demeanor. *See id.*

Our review of the record establishes that—taken together—the following evidence supports the finding that the Motion was filed with the clerk's office:

---

[5] The State concedes its legal question is one of first impression, but we need not decide it for the first time in this case, because we conclude that the habeas court correctly found that the Motion *was* filed.

- Judge Fuller acknowledged that Shavers presented the Motion to him in open court, and he signed it.

- Shavers testified that Humphreys represented him in presenting the Motion and getting it signed. Judge Fuller returned the signed Motion to Humphreys, who then took the Motion through another door and returned with a copy for Shavers. This testimony supports an implied finding that Humphreys took the Motion to the clerk to be filed.

- Shavers testified that Judge Fuller told him to be sure his contact information was up to date because he'd be contacted about the new trial and an appointed attorney. Shavers testified that when Humphreys returned with the copy of the Motion, he reminded Shavers about that. When Shavers did not hear from the court, he called and left a message asking for information about the appointed attorney. When he tried to speak to Judge Fuller about the Motion, the judge would not speak to him without an attorney. He continued trying to get information about the Motion until his probation officer relayed a threatening message from the trial court. Thus, as long as it was reasonable to do so, Shavers pursued his position that he had been granted a new trial.

- Humphreys testified that he contracted with Shavers on May 2, 2007, and that Shavers paid him $300.00 for representation. He rejected the suggestion that the representation could have been for a post-conviction consultation or to do the new trial; it might have been a reasonable fee for handling the Motion as Shavers described. This testimony—along with the fact that the Motion was presented and signed three days later—supports an implied finding that Humphreys did represent Shavers in obtaining a new trial.

- The location and contents of Shavers's file in this case were uncertain from soon after his DWI trial through the week of the habeas hearing:

  - When Shavers tried to get a copy of the file in 2007, the clerk told him the court had the file. When he called the court, he was told he could not see the file without an attorney.

  - Judge Fuller acknowledged several times in his testimony that the file had gone missing. When asked to explain the presence of two different judgments in the case, signed on different days, Judge Fuller conceded that it appeared some paperwork had been lost.

- Early in the writ process, the State attempted to get the whole file, but it received only three pages. After writ counsel was appointed for Shavers, he attempted to get a copy of the whole file, but he received only five pages. Shortly before the habeas hearing, counsel again sought the entire file, and he received fifty-six pages. King could not explain these varying responses. The file was described by counsel for the State as "ever-changing" and by counsel for Shavers as "morphing" throughout this process.

- The file does not contain an information charging the misdemeanor; King explained that the information is what the clerks would have used to create the file. The file also does not contain a jury charge or any documentation approving Shavers's attorney's withdrawal. Judge Fuller testified that these documents should have been in the file.

We conclude that this evidence supports the trial court's finding that the Motion was filed but that it is one of a number of significant documents that are missing from the clerk's file.

Ultimately, our conclusion is required given that the determination of whether the Motion was filed turns on the witnesses' credibility and demeanor. Counsel for the State acknowledged in his closing remarks that the habeas court was faced with a credibility question:

> So where we are at now is a crossroads between who this Court thinks is more credible, a 30-year jurist who has had experience and recalls this case because it is one of the few cases in which he granted a motion for new trial or an applicant who has a lengthy DWI criminal history and filed this writ out of the attempt to get out of a possible sanction in another state.

Despite counsel's framing of that issue, the habeas court found Shavers credible and found that the Motion had been filed. We must defer to that finding. *See Diamond*, 613 S.W.3d at 544. We overrule the State's first issue.

–13–

*The Habeas Court's Subject Matter Jurisdiction*

In its second issue, the State challenges Shavers's habeas argument that the trial court lacked jurisdiction to enter the June 8, 2007 order placing him on community supervision. Shavers argued that after the trial court granted the Motion, there was no longer a conviction, and the record lacks any evidence of a subsequent conviction after the Motion was granted. Judge Fuller confirmed that no new plea was taken in the case. The State never filed an appeal. Shavers argued, therefore, that the trial court had no authority to act as it did by imposing punishment.

The appellate rules support Shavers's general argument concerning the posture of the case after the Motion was granted. "Granting a new trial restores the case to its position before the former trial." TEX. R. APP. P. 21.9(b). The habeas court stated this rule at the end of its Findings of Fact, and—in its Conclusions of Law—the court stated that "Applicant's case is placed reverted back to the point of an information being filed for the offense of DWI."

The State argues that the trial court could have changed its mind and rescinded the Motion; it argues that the judgment signed by Judge Fuller on June 7, after the Motion was signed, indicates such a changed mind. We disagree. In the first instance, the State cannot point to facts in the record that would support such an implied finding. Judge Fuller did not testify that he had changed his mind about granting the Motion. On the contrary, the judge believed that Shavers had chosen the "good probation" over a new trial, and that was why he proceeded to order probation.

Legally, the State relies on *Kirk v. State*, 454 S.W.3d 511 (Tex. Crim. App. 2015). In that case, the trial judge granted a new trial on punishment, but the judge subsequently signed an order that rescinded its prior order granting the new trial on punishment. *Id.* at 512. The opinion deals primarily with how long a trial court has to rescind the grant of a motion for new trial. The *Kirk* court looked to how the Texas Supreme Court had decided the same issue and said: "When a new trial is granted, the Supreme Court observed, the case stands 'the same as though no trial was had,' and accordingly, the trial court should have the power to set aside a new trial order '*any time before a final judgment is entered*.'" *Id.* at 513 (quoting *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 230–31 (Tex. 2008)) (emphasis added). The *Kirk* court agreed with this reasoning and abandoned its prior limitation of 75 days in which to effect a rescission. *Id.* at 515. In this case, however, the State does not point to an order rescinding the Motion "any time before a final judgment is entered." *See id.* Instead, it points to the final judgment itself. We do not understand *Kirk* to equate these procedural actions of a trial court.

At this point in our discussion we must also address a significant recent holding of the Texas Court of Criminal Appeals. While this case was on appeal— indeed, approximately two weeks before scheduled oral argument—that court issued *Sledge v. State*, 666 S.W.3d 592 (Tex. Crim. App. 2023).[6] The *Sledge* court initially

---

[6] We note that, before oral argument began, the Court provided copies of the *Sledge* opinion to counsel for the parties and afforded them a brief time to review it. Counsel then discussed their initial responses to

–15–

repeated the longstanding rule concerning motions for new trial that "a bare recital that 'the verdict is contrary to the law and evidence' constitutes a legal sufficiency challenge and *only* a sufficiency challenge." *Id.* at 601 (citing *State v. Zalman*, 400 S.W.3d 590, 594 (Tex. Crim. App. 2013) (in turn, citing *Bogan v. State*, 180 S.W. 247, 248 (Tex. Crim. App. 1915))). The court then stated:

> When a trial or appellate court determines that the evidence is insufficient to support the verdict, the defendant or appellant must be acquitted.

*Id.* (citing *Hudson v. Louisiana*, 450 U.S. 40, 43 (1981)). Shavers's form Motion, like the motion in *Sledge*, included only the bare recital that he "moves this Judge to grant a new trial for the reason that the verdict is contrary to the law and evidence." Accordingly, that Motion constituted only a legal sufficiency challenge. *See id.*[7] And because Judge Fuller granted the Motion, concluding that the evidence was insufficient to support the guilty verdict, Shavers "must [have been] acquitted" at that time. *See id.*

We have concluded that the Motion was filed and presented as required to be effective. We have further concluded that the granting of the Motion resulted in Shavers's acquittal of the DWI charge. Accordingly, while we conclude the trial court correctly granted the Amended Application, we must clarify the ultimate

---

the opinion with the panel. The parties were encouraged multiple times during argument to file letter briefs addressing the effect of *Sledge*, if any, on this case. Neither party filed such a brief.

[7] As we have discussed, Judge Fuller could not recall why he granted the Motion, but he rejected all possible reasons raised by counsel at the hearing.

procedural result of the Motion. The habeas court concluded that Shavers's case should be returned to the position it was in when his information was filed. But there can be no second trial. "Giving effect to the [Motion's] language at issue, a second prosecution would violate principles of double jeopardy." *See id.* at 602; *see also State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996) ("[W]hen a jury returns a guilty verdict and the trial court grants the defendant's motion for new trial based upon insufficiency of the evidence under Texas Rule of Appellate Procedure 30(b)(9), double jeopardy prevents the trial court from entering any other judgment than an acquittal.").

We conclude the trial court did lack the authority to sign the June 8 order placing Shavers on community supervision. We overrule the State's second issue.

*Laches*

In its third issue, the State argues that the habeas court's ruling is barred by the doctrine of laches. The court concluded that "the doctrine of laches does not bar consideration of all other equitable issues in this case." We agree, although we acknowledge that our understanding of the posture of Shavers's 2007 case is now different from the habeas court's understanding. We have found no authority that would support applying the defense of laches after the fact to void Shavers's acquittal. Indeed, we have concluded that once Judge Fuller granted the Motion, the only action that could be taken is entry of an order of acquittal. *See Savage*, 933 S.W.2d at 499.

Accordingly, we conclude that the defense of laches cannot undo the legal effect of the Motion. We overrule the State's third issue.

## Conclusion

We affirm the habeas court's May 2, 2022 order granting the second ground of Shavers's Amended Application. We remand the case to that court for entry of a judgment of acquittal.

<table>
<tr><td></td><td>/Bill Pedersen, III//</td></tr>
<tr><td></td><td>BILL PEDERSEN, III</td></tr>
<tr><td>220438f.u05</td><td>JUSTICE</td></tr>
<tr><td>Do Not Publish</td><td></td></tr>
<tr><td>TEX. R. APP. P. 47</td><td></td></tr>
</table>



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-22-00438-CR      V.

BRADLEY SHAVERS, Appellee

On Appeal from the County Criminal Court No. 5, Dallas County, Texas
Trial Court Cause No. MC19-A6636.
Opinion delivered by Justice Pedersen, III. Justices Molberg and Miskel participating.

Based on the Court's opinion of this date, we **AFFIRM** the habeas court's May 2, 2022 order. We **REMAND** the case to that court for entry of a judgment of acquittal.

Judgment entered this 20th day of September, 2023.